UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JOSHUA M. BERMAN,

JUDGE BATTS

              *Plaintiff*

-*against*-

TYCO INTERNATIONAL LTD.
a Bermuda corporation, and
TYCO INTERNATIONAL (US) INC.
A Nevada corporation,

              *Defendants.*

**08  CV  00043**

Civ. No.: _____

Removed from New York
Supreme Court, County of
New York
Index Number: 07/604049



RECEIVED
JAN 03 2008
U.S.D.C. S.D. N.Y.
CASHIERS

**NOTICE OF REMOVAL TO UNITED STATES DISTRICT COURT**

    Defendants Tyco International Ltd. ("Tyco Ltd.") and Tyco International (US) Inc.

("Tyco US"), by their attorneys, Beveridge & Diamond, P.C., hereby remove this matter from

the Supreme Court of the State of New York, County of New York, to the United States District

Court for the Southern District of New York, and respectfully state the following:

    1.  On December 14, 2007, Tyco US was served with a Summons and Complaint in the

above-captioned action, a true and correct copy of which is annexed hereto as Exhibit A.

    2.  This Notice of Removal is being filed within 30 days from the date of service of the

Summons and Complaint on Tyco US.

    3.  On December 21, 2007, Defendant Tyco Ltd. received a Summons and Complaint in the

above-captioned action via first-class mail at its offices in Bermuda.

4.   Plaintiff Joshua M. Berman ("Berman") alleges that he is a U.S. citizen who maintains a residence at Residence Alexandra, La Frasse, 1660 Chateau-d'Oex, Switzerland.  Complaint ¶ 1.

5.   Upon information and belief, Berman is a citizen of the State of New York.

6.   Plaintiff Berman alleges that Defendant Tyco US is a Nevada corporation with its principal place of business in New Hampshire.  Complaint ¶ 3.

7.   Defendant Tyco US is a Nevada corporation with its principal place of business in California.

8.   Defendant Tyco Ltd. is a corporation organized and existing under the laws of Bermuda, with a principal place of business in Bermuda.  Complaint ¶ 3.

9.   The matter in controversy exceeds $75,000 in value exclusive of interest and costs.  *See* Complaint ¶¶ 49, 51, 53, 56, 59, 62, 64.

10. The matter in controversy is between citizens of different States, and citizens of a State and citizens or subjects of a foreign state.

11. The United States District Court for the Southern District of New York has original jurisdiction under 28 U.S.C. § 1332(a) as the matter in controversy exceeds $75,000 in value exclusive of interest and costs, and the action is between citizens of different States, and citizens of a State and citizens or subjects of a foreign state.

12. Because this Court has original jurisdiction over this action under 28 U.S.C. § 1332(a), this action is removable pursuant to 28 U.S.C. § 1441(a) and § 1446.

13. In the Complaint, Berman also alleges, among other things, that "Tyco's policies and practices in effect with respect to severance pay for corporate employees . . . constitute an employee benefit plan under the Employment Retirement Income Securities Act of 1974 ('ERISA'), 29 U.S.C. 1000 et seq" and that Tyco US's policies and practices violate ERISA, entitling Berman to damages.  *See* Complaint ¶¶ 60-62.

14. The United States District Court for the Southern District of New York has original "federal question" jurisdiction under 28 U.S.C. § 1331 where a claim arises under ERISA. Moreover, an ERISA action is removable when, on the face of the pleading, a plaintiff's own statement shows that the claim is based on federal law. *See Weisenthal v. United Health Care Ins. Co.*, Nos. 07 Civ. 1175, 07 Civ. 0945, 2007 U.S. Dist. LEXIS 91447, *7-*9 (S.D.N.Y. Nov. 29, 2007).

15. Because this Court has original jurisdiction over this action under 28 U.S.C. § 1331, this action is also removable pursuant to 28 U.S.C. § 1441(b) and § 1446.

WHEREFORE, Defendants Tyco US and Tyco Ltd. hereby remove this action from the Supreme Court of the State of New York to the United States District Court for the Southern District of New York.

Dated: New York, New York
January 3, 2008

Respectfully submitted,

BEVERIDGE & DIAMOND, P.C.

By: _John H. Kazanjian_

John H. Kazanjian (JK 6372)
Zackary D. Knaub (ZK 7830)
477 Madison Avenue, 15th Floor
New York, NY 10022-5802
(212) 702-5400
(212) 702-5450 (fax)

Attorneys for Defendants Tyco International Ltd. and Tyco International (US) Inc.

Exhibit A

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

---------------------------------------------------------- X

JOSHUA M. BERMAN,

       Plaintiff,

  -against-

TYCO INTERNATIONAL LTD.,
a Bermuda corporation, and
TYCO INTERNATIONAL (US) INC.,
a Nevada corporation,

      Defendants.

----------------------------------------------------------

Index No.
Date Purchased

Plaintiff designates New York County as
the place of venue because the causes of
action accrued in New York county.

**SUMMONS**

07604049

**FILED**
DEC 10 2007
NEW YORK
COUNTY CLERK'S OFFICE

To the above named Defendants:

  **You are hereby summoned** to answer the complaint in this action and to serve a copy

of your answer, or, if the complaint is not served with this summons, to serve a notice of appearance,

on the Plaintiff's Attorney within 20 days after the service of this summons, exclusive of the day of

service (or within 30 days after the service is complete if this summons is not personally delivered to

you within the State of New York); and in case of your failure to appear or answer, judgment will be

taken against you by default for the relief demanded in the complaint.

Dated: New York, New York
   December 10, 2007

       WECHSLER & COHEN, LLP

       By: David B. Wechsler
          Kim Lauren Michael
          *Attorneys for Plaintiff*
          17 State Street, 15th Floor
          New York, New York 10004
          (212) 847-7900

       1

Defendants' addresses:

TYCO INTERNATIONAL LTD
The Zurich Center
90 Pitts Bay Road, 2nd Floor
Pembroke HM 08, Bermuda

TYCO INTERNATIONAL (US) INC.
9 Roszel Rd.
Princeton, New Jersey 08540

One Tyco Park
Exeter, New Hampshire 08333

2

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
-----------------------------------------------------------------X

JOSHUA M. BERMAN,                                    Index No.

                Plaintiff,

    -against-                                        **VERIFIED COMPLAINT**

TYCO INTERNATIONAL LTD.,
a Bermuda corporation, and
TYCO INTERNATIONAL (US) INC.,
a Nevada corporation,

                Defendants.

*FILED* 07604049
DEC 10 2007
NEW YORK
COUNTY CLERKS OFFICE

-----------------------------------------------------------------X

    Plaintiff, Joshua M. Berman ("Berman"), by and through his attorneys, Wechsler

& Cohen, LLP, as and for his complaint against Tyco International Ltd. and Tyco

International (US) Inc. (collectively "Tyco"), respectfully alleges as follows:

### THE PARTIES

    1.    Berman is a citizen of the United States residing at Residence Alexandra,

La Frasse, 1660 Chateau-d'Oex, Switzerland.

    2.    Defendant Tyco International Ltd. is a Bermuda corporation with its

principal place of business at The Zurich Center, 90 Pitts Bay Road, Pembroke HM 08,

Bermuda.

    3.    Defendant Tyco International (US) Inc. is a Nevada corporation with its

principal place of business at One Tyco Park, Exeter, New Hampshire 08333, and is a

wholly-owned indirect subsidiary of Tyco International Ltd.  Upon information and

belief, Berman and other individuals who were employed by Tyco International Ltd. were

paid by Tyco International (US) Inc.

## VENUE

4.      Venue is proper in this Court since, among other things, the discussions between Berman and Tyco leading to his employment by Tyco took place in New York, Tyco furnished Berman with an office and a secretary at its executive offices in New York, Berman performed services for Tyco in New York, and the Board of Directors of Tyco approved Berman's employment and compensation at a meeting held in New York.

## STATEMENT OF FACTS

### A.    Berman's service to Tyco

5.      Berman is a lawyer. From August 1961, following his graduation from law school, to February 2000 he was a member of three law firms: Goodwin Procter LLP (from August 1961 to August 1980), Berman Engel P.C. ("Berman Engel") (from September 1980 to March 1985), and Kramer Levin Naftalis & Frankel LLP ("Kramer Levin") (from April 1985 to February 2000).

6.      From 1965 on, Berman worked extensively on matters involving Tyco,[1] primarily in the area of corporate mergers and acquisitions.

7.      In 1966, Berman was elected an officer of Tyco.

8.      In 1967, Berman was elected to the Board of Directors of Tyco.

9.      In 1970, following a management change at Tyco, Berman was elected Chairman and Chief Executive Officer of Tyco and served as Chairman until 1973, when new management was recruited.

10.     In 1992, L. Dennis Kozlowski ("Kozlowski") became the Chairman and Chief Executive Officer of Tyco.

---

[1] Tyco International Ltd. is the successor company to Tyco Laboratories, Inc.  For purposes of this Complaint, the term "Tyco" refers to both Tyco International Ltd. and its predecessor company.

11.    In 1997, Berman was elected a Vice President of Tyco.

12.    During Kozlowski's tenure as Chief Executive Officer, Tyco was exceedingly active in corporate mergers and acquisitions and, through such acquisitions, had become one of the largest (measured by stock market valuation) industrial companies in the world.

13.    By 1999, Berman's work on Tyco matters was by far the largest part of his law practice activity.

14.    In or about October 1999, Berman and Tyco (through Kozlowski) agreed that Berman would withdraw from Kramer Levin, where he was the functional equivalent of a partner, and would continue his work on Tyco matters as a Vice President and employee of Tyco. Berman and Tyco (again, through Kozlowski) agreed that Berman would receive cash compensation of $360,000 per year, or $30,000 per month.

15.    Upon information and belief, on or about October 13, 1999 Kozlowski advised the compensation committee of the Board of Directors of Tyco (the "Compensation Committee") of his agreement (on behalf of Tyco) with Berman. In or about October 1999, Kozlowski told Berman that the Compensation Committee had approved Berman's employment by Tyco on the terms agreed. Berman justifiably relied on Kozlowski's representation.

16.    Pursuant to that agreement, Berman withdrew from Kramer Levin as of February 29, 2000 and began working directly and exclusively for Tyco on March 1, 2000.

17.    Beginning in January 2002, Berman and, upon information and belief, other directors of Tyco first learned of certain transactions that had been authorized by

3

Kozlowski and Mark Swartz ("Swartz"), Tyco's then Chief Financial Officer. Berman and, upon information and belief, other directors regarded these transactions as improper.

18.    On June 3, 2002, the Board of Directors of Tyco (the "Board") asked for and obtained Kozlowski's resignation, and the Board retained the law firm of Boies, Schiller & Flexner ("Boies Schiller") to conduct a complete independent review and investigation of all transactions between Tyco and Tyco management, including all its officers and directors.

19.    Following Kozlowski's resignation, the Board elected John Fort ("Fort"), a Tyco director, as an interim chief executive officer while it began a search for a new permanent chief executive officer.

20.    The investigation conducted by Boies Schiller brought many things to light that Berman and, upon information and belief, other directors had not known. The investigation uncovered certain transactions whereby Kozlowski and Swartz had, without authority, appropriated to themselves large amounts of Tyco money. Kozlowski and Swartz were later convicted of larceny in New York State Criminal Court and are now serving their sentences in a New York prison facility.

21.    In June 2002, Berman learned that Tyco Human Resources had not enrolled Berman as a Tyco employee but had instead treated the salary payments paid to him each month as "consulting fees" (even though, as Tyco later stated in a current report on Form 8-K filed with the United States Securities and Exchange Commission in September 2000, Berman was an employee of Tyco, as defined by Internal Revenue Code, Section 31.3121(d)-1). In addition, Berman and, upon information and belief, other directors learned that the health insurance for Berman and his wife was being

4

provided not, as he had been told, under the Tyco plan for corporate employees but rather under a separate plan covering Kozlowski's family members and employees. In June 2002, Berman was told that the then current members of the Compensation Committee (consisting of two individuals who were members of the Compensation Committee on or about October 13, 1999 and two individuals who were not) either did not know or could not remember that the Compensation Committee had been advised on or about October 13, 1999 of Berman's employment arrangements with Tyco.

22.     On June 18 and 21, 2002, the Compensation Committee met to deal, *inter alia*, with these matters.

23.     By memorandum to the Board from the Compensation Committee dated June 25, 2002, Steven W. Foss ("Foss"), then Chairman of the Compensation Committee, reported that the Compensation Committee "unanimously recommends [that] . . . [t]he Compensation of Joshua M. Berman, Esquire, shall be set at $30,000 per month in his function as Vice President of the Corporation. He shall be entitled to Health Benefits (but not other fringe benefits) as an employee."

24.     The full Board met on June 25, 2002 to address, *inter alia*, these matters. At the June 25, 2002 meeting, the Board approved the recommendations of the Compensation Committee that Berman's compensation be continued at the same $30,000 per month level it had been since March 2000 and that the compensation be paid to him "as an employee and Vice President of the Company." The minutes of the June 25, 2002 meeting recite that:

> . . . Berman had until 29 February 2000 been affiliated with a law firm that served as outside counsel to the Company and has since 1 March 2000 been employed by the Company to render legal, regulatory and other professional

5

services. The Compensation Committee recommends that his compensation be continued at the same level as he had received since 1 March 2000, namely that his compensation be set at $30,000 per month; that the compensation be paid to him as an employee and Vice President of the Company; that he be entitled to health benefits but not other fringe benefits; and that he receive normal and customary expenses and have the use of a secretary.

After discussion, upon motion duly made and seconded, it was unanimously (Messrs. Fort and Berman not participating in the discussion or vote as to matters affecting them) voted to approve the recommendations of the Compensation Committee regarding the compensation of Messrs. Fort and Berman as set forth above.

25.     The terms of Berman's employment were confirmed by letter agreement dated July 31, 2002 between Berman and the Compensation Committee (the "July 31, 2002 letter agreement").

26.     Following the Board's action on June 25, 2002, Berman continued to work for Tyco as he had since March 2000, though the nature of his work had changed beginning in January 2002. Tyco's mergers and acquisitions activity had declined, and Berman worked full time on other matters that were then current, including a break up plan that Tyco announced in January and withdrew several months later, the proposed divestitures of several businesses, and the payments made on the authority of Kozlowski to a director and to an executive officer that had not been properly authorized.

27.     In July 2002, the Board recruited and elected Edward D. Breen ("Breen") as the new Chairman, President, and Chief Executive Officer of Tyco.

28.     Upon information and belief, beginning sometime in 2002 and continuing through that year, the Manhattan District Attorney's Office (the "Manhattan DA") was

6

investigating the dealings between Tyco and Kozlowski and Swartz and then began investigating the dealings between Tyco and all its directors and officers.

29.     Upon information and belief, on or about August 9, 2002, John Moscow ("Moscow"), head of the Manhattan DA's investigation of Tyco, met with Breen to report on the status of the Manhattan DA's investigation, including its investigation of the dealings between Tyco and all its directors and officers.

30.     A copy of the July 31, 2002 letter agreement was due to be filed as an exhibit to a quarterly report on Form 10-Q that Tyco was required to file with the United States Securities and Exchange Commission on August 14, 2002 and which, upon filing, would become publicly available. On August 12, 2002, an attorney with Boies Schiller, Paul Verkuil ("Verkuil"), called Berman and told him that Breen was concerned about the public disclosure of Tyco's employment agreement with Berman. Verkuil told Berman that Breen was concerned with how it would look if Tyco reported its agreement with Berman and then the Manhattan DA's investigation discovered a problematic issue with Berman. Verkuil asked that the agreement be terminated until matters were clarified. Out of loyalty to Tyco, Berman agreed to do so.

31.     By the end of August 2002 the Manhattan DA indicated that any questions it had in its investigation of Tyco regarding Berman had been answered to its satisfaction.

32.     During the five-month period July through November 2002, Berman was asked to do, and did, a great deal of work regarding so-called "legacy matters," i.e., matters that took place during the Kozlowski era. Many questions and issues were being raised, and a number of governmental investigations and inquiries were taking place regarding these matters. Many of the corporate officers and staff during this era were

7

themselves implicated in questionable transactions and had been terminated or soon would be terminated. As a result, there were only a few individuals at Tyco who were available to work on preparing the required disclosures and reports and responding to the many investigations and inquiries, both formal and informal, that were taking place. The work was done during this period by a handful of individuals within Tyco, including Berman, and individuals from Boies Schiller and other outside firms that had been retained by Tyco.

33.    Berman worked full time for Tyco on these matters during this five-month period.

34.    In September 2002 the Tyco Board voted that none of the individuals who had been directors of Tyco before the election of Breen as Chairman would be nominated for election as a director at the next annual shareholders' meeting. A number of directors, including Berman, agreed that, as new directors were identified and recruited, they would resign to make way for their replacements. Berman was asked to remain as a director until after the directors' meeting in December 2002.

35.    Beginning in September 2002, Berman raised with Breen and John A. Krol ("Krol"), the newly elected "lead director" of Tyco, the question of what continuing role, if any, Berman would have as a Vice President and employee of Tyco. Berman offered to continue his work and suggested he had much to contribute on legacy matters, which were the subject of numerous class action and derivative lawsuits against Tyco and governmental inquiries and investigations of Tyco. Breen and Krol were noncommittal, and it was clear to Berman that Breen did not wish Berman to have any continuing role as a Vice President or employee of Tyco.

8

36.    Following the directors' meeting on December 5, 2002, Berman resigned as a director of Tyco (after thirty-five years of service) and as an officer of Tyco.

37.    Berman worked full time as a Vice President and employee of Tyco during the five-month period from July through November 2002 but never received his salary or other payment for his services during this five-month period.

**B.    The Severance Plan for Corporate Employees**

38.    On August 6, 2002, the Compensation Committee adopted a severance plan for Tyco's corporate employees that became effective as of July 1, 2002 (the "Plan"). Pursuant to the Plan, all Tyco corporate employees who were full-time as of the effective date were automatically considered participants in the Plan as of that date. The severance pay for employees holding the position of Vice President and above was one month of pay for every $10,000 of salary to a maximum of 24 months. Upon information and belief, the severance pay for such employees under the Plan reflected Tyco's severance pay policies and practices then in effect.

39.    As of July 1, 2002, the effective date of the Plan, Berman was a full-time Tyco corporate employee holding the position of Vice President. As such, Berman was and is to be automatically considered a participant in the Plan as of that date. Upon termination of his employment, Berman was and is entitled under the Plan to one month of pay for every $10,000 of salary to a maximum of 24 months. Given Berman's salary of $360,000 per year, Berman was and is entitled to severance pay of $30,000 per month for 24 months, a total of $720,000.

40.    Tyco has failed and refused to pay Berman any severance pay.

**C.    Berman's attempts to be paid his compensation and severance pay**

9

41.    In February 2003, Berman wrote a memorandum to William Lytton ("Lytton"), the then recently hired Executive Vice President and General Counsel of Tyco, setting forth the facts regarding Berman's employment by Tyco and the amounts to which Berman was entitled but had not been paid, *i.e.,* Berman's salary for work performed as an employee during the five-month period from July through November 2002, and severance pay under the Plan upon the termination of his employment.

42.    Whether by mistake or by calculation, Lytton treated Berman's memorandum as a request for discretionary payments in recognition of past services. By letter dated March 11, 2003, Lytton informed Berman that on March 6, 2003 the appropriate Tyco committees met to consider Berman's "request" and decided that no severance or other payment to Berman was "either required or appropriate." Lytton further stated that it would be contrary to Tyco's interests to authorize any severance payments to Berman without a substantial basis in Tyco's records for concluding that Berman was entitled to such payments.

43.    On April 3, 2003, Berman responded to Lytton setting forth the bases on which Berman was entitled to the amounts outlined in his earlier memorandum.

44.    Lytton wrote back to Berman by letter dated May 16, 2003 stating, without reference to any facts and without giving any reasons therefor, that "[a]s stated in my letter to you of March 11, we have concluded that you were not an employee of Tyco during any relevant period and are not entitled to receive [severance] payments." Regarding payments of salary after June 30, 2002, Lytton stated, again without reference to any facts and without giving any reasons therefor, "I think that the record is clear that

10

you are not entitled to receive any compensation with respect to that period beyond the directors fees paid to you."

45.    On June 29, 2003, Berman wrote again to Lytton stating that Berman was indeed an employee of Tyco and was entitled to remuneration for his services while employed and for severance pay following his termination.  Berman suggested that he and Tyco agree on an appropriate process to look into the facts and resolve the matter, such as private mediation or another alternative dispute resolution process, and that Berman welcomed Lytton's suggestions in this regard.  Berman never received a response to this letter.

46.    On January 18, 2006, Berman wrote to Breen outlining the facts in the matter and Berman's efforts to recover the amounts due him and stating that he would like to get the matter resolved.

47.    By letter dated March 30, 2006, Lytton wrote to Berman that Berman's claims were presented to Tyco's Compensation and Human Resources Committee of the Board on March 8, 2006, and "the Committee decided that you are not entitled to severance benefits or any additional pay for periods after June 30, 2002."

48.    Lytton's statements and conclusions regarding Berman's employment are flatly contradicted by the facts, including without limitation the action of the Board taken on June 25, 2002, as set forth in the minutes of the Board meeting of that date, approving the recommendations of the Compensation Committee set forth in a memorandum of that same date, and the July 31, 2002 letter agreement, all of which Berman brought to Lytton's attention before May 16, 2003.

11

49.  Berman respectfully requests that the Court render a decision and issue a judgment in his favor for, among other things:

a.  a lump sum payment of his salary for the five-month period from July through November 2002 in the total amount of $150,000;

b.  severance pay, pursuant to the Plan, in the amount of $720,000;

c.  statutory sanctions pursuant to New York's Labor Law; and

d.  interest, attorneys' fees, and such other costs and expenses as the Court may deem just and proper.

## FIRST CLAIM FOR RELIEF

50.  Berman repeats and realleges the allegations contained in paragraphs "1" through "49" hereof as if fully set forth at length herein.

51.  Tyco's refusal to pay Berman his salary and severance pay constitute breaches of express and/or implied contracts with Berman entitling Berman to an award in an amount to be established at trial but believed to be at least $870,000, plus interest, attorneys' fees, costs and expenses.

## SECOND CLAIM FOR RELIEF

52.  Berman repeats and realleges the allegations contained in paragraphs "1" through "51" hereof as if fully set forth at length herein.

53.  As an aggrieved employee of Tyco, Berman may elect either to sue for compensation under the terms of his employment agreement or to sue in *quantum meruit* for the reasonable value of the services he performed for Tyco, plus interest, attorneys' fees, costs and expenses. The value of such services is believed to be well in excess of $150,000.

12

## THIRD CLAIM FOR RELIEF

54.     Berman repeats and realleges the allegations contained in paragraphs "1" through "53" hereof as if fully set forth at length herein.

55.     Even in the absence of an express or implied agreement between Tyco and Berman, Berman is nonetheless entitled to appropriate relief for unjust enrichment and/or restitution since (a) Berman enriched Tyco by the services he rendered, (b) in rendering such services Berman reasonably relied on receiving fair compensation from Tyco for his services, and (c) Tyco asked Berman to render such services, knew that Berman was rendering such services and yet refused to pay any compensation to Berman for such services.

56.     Tyco's refusal to pay Berman his compensation has damaged Berman in an amount to be proven at trial but which is believed to be well in excess of $150,000, plus interest, attorneys' fees, costs and expenses.

## FOURTH CLAIM FOR RELIEF

57.     Berman repeats and realleges the allegations contained in paragraphs "1" through "56" hereof as if fully set forth at length herein.

58.     Even in the absence of an expressed or implied agreement between Tyco and Berman, Berman is nonetheless entitled to appropriate relief under the doctrine of promissory estoppel since (a) Tyco made clear and unambiguous promises to Berman regarding his compensation, (b) Berman reasonably and justifiably relied on those promises, (c) Berman's reliance was reasonable and foreseeable, and (d) Berman was injured by his reliance on such promises.

13

59.    As a result of the foregoing, Berman has suffered damages in an amount to be established at trial but which is believed to be in excess of $870,000, plus interest, attorneys' fees, costs and expenses.

## FIFTH CLAIM FOR RELIEF

60.    Berman repeats and realleges the allegations contained in paragraphs "1" through "59" hereof as if fully set forth at length herein.

61.    The Plan (*i.e.,* the severance plan for Tyco's corporate employees that became effective as of July 1, 2002) and Tyco's policies and practices in effect with respect to severance pay for corporate employees ("Tyco's Policies and Practices") constitute an employee benefit plan under the Employee Retirement Income Securities Act of 1974 ("ERISA"), 29 U.S.C. 1000 et seq.

62.    Tyco's refusal to pay Berman amounts due him under the Plan and Tyco's Policies and Practices constitutes a violation of ERISA entitling Berman to the recovery of $720,000 due him under the Plan and Tyco's Policies and Practices plus "reasonable attorney's fees and costs" under 29 U.S.C. §1132(g)(1).

## SIXTH CLAIM FOR RELIEF

63.    Berman repeats and realleges the allegations contained in paragraphs "1 through "62" hereof as if fully set forth at length herein.

64.    Tyco's conduct, at least insofar as Tyco continues willfully to withhold Berman's "non-discretionary" minimum guaranteed compensation, constitutes a violation of Section 198, subdivision 1-a, of the New York Labor Law, entitling Berman to appropriate compensatory damages, a statutory penalty of 25%, and attorneys' and/or other fees under that statute.

14

WHEREFORE, Plaintiff demands the entry of an award in an amount to be determined at trial but believed to be at least $870,000 in compensatory damages, plus statutory penalties pursuant to subdivision 1-a of Section 198 of the New York Labor Law, interest, attorneys' fees, costs, expenses, and such other and further relief as the Court may deem just and proper.

Dated:     New York, New York
           December 3, 2007

                                        WECHSLER & COHEN, LLP
                                        Attorneys for Plaintiff

                                        By: _____
                                            David B. Wechsler
                                            Kim Lauren Michael
                                            17 State Street, 15th Floor
                                            New York, New York 10004
                                            (212) 847-7900

15

## VERIFICATION

STATE OF NEW YORK        )
                         ) ss.:
COUNTY OF NEW YORK       )

JOSHUA M. BERMAN, being duly sworn, deposes and says:

I am the plaintiff in the within action. I have read the foregoing Verified Complaint and know the contents thereof. The same is true based upon my personal knowledge, except as to those matters alleged upon information and belief, and as to those matters I believe them to be true.

JOSHUA M. BERMAN

Sworn to before me this 3rd
day of December, 2007

NOTARY PUBLIC

AMY SUE EIGEN
Notary Public, State of New York
No. 01EI6069601
Qualified in Richmond County
Commission Expires Aug. 24, 2009

16

WECHSLER & COHEN, LLP

| Index No. | | Year 2007 | RJI No. | | Hon. |

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

JOSHUA M. BERMAN,

*Plaintiffs,*

-against-

TYCO INTERNATIONAL LTD.,
a Bermuda corporation, and
TYCO INTERNATIONAL (US) INC.,
A Nevada corporation

*Defendants.*

---

**VERIFIED COMPLAINT**

---

**WECHSLER & COHEN, LLP**

*Attorneys for*
*Plaintiff JOSHUA M. BERMAN*
*Office and Post Office Address, Telephone*

**17 State Street - 15ᵗʰ Floor**
**New York , New York 10004**
**Telephone : (212) 847-7900**

To                                     Signature (Rule 130-1.1-a)

                                       Print name beneath
                                       DAVID B. WECHSLER
Attorney(s) for

Service of a copy of the within                    is hereby admitted.

Dated,

                                       Attorney(s) for

---

Please take notice
☐ NOTICE OF ENTRY
that the within is a (*certified*) true copy of a
duly entered in the office of the clerk of the within named court on
☐ NOTICE OF SETTLEMENT
that an order                          of which the within is a true copy will be presented for
settlement to the HON                  one of the judges
of the within named court, at.
on                        at            M

Dated,
                                       Yours, etc.
                                       **WECHSLER & COHEN, LLP**
                                       *Attorneys for*